UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES DEMUMBREUM, ) | |
| ) | JURY DEMAND |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO: |
| ) | |
| MORNINGSIDE OF FRANKLIN, LLC, ) | Judge: |
| ) | |
| Defendant. ) | Magistrate Judge: |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. NATURE OF THE CASE

1. This is an action brought by Plaintiff, Charles Demumbreum ("Demumbreum"), by counsel, against Defendant, Morningside of Franklin, LLC, ("Defendant"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII") for its discriminatory actions against him based on his race, African-American and for retaliation for engaging in activity protected by Title VII.

### II. PARTIES

2. Demumbreum is a United States citizen and resident of Tennessee, who at all times relevant to this action, resided within the geographical boundaries of the Middle District of Tennessee.

3. Defendant is a Foreign Limited Liability Corporation that maintains offices and conducts business within the geographical boundaries of the Middle District of Tennessee.

### III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 2000e-5(f)(3).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b).

6. Demumbreum, at all times relevant, was an "employee" as that term is defined by 42 U.S.C. §2000e(f).

7. Demumbreum satisfied his obligation to exhaust his administrative remedies having timely filed U.S. Equal Employment Opportunity Commission Charge No. 494-2021-01563 alleging race discrimination and retaliation. Demumbreum received his Notice of Suit Rights and timely files this action

8. All events, transactions, and occurrences relevant to this lawsuit arose within the geographical environs of the Middle District of Tennessee, thus venue is proper in this Court.

### IV. FACTUAL ALLEGATIONS

9. Demumbreum, who is African-American, began his employment with the Defendant in 2017 as a Maintenance Associate.

10. Demumbreum had a DUI charge pending when he applied for employment with the Defendant, which he disclosed on his application and was on any background/DMV check as part of any pre-employment screening.

11. During all relevant time periods, Demumbreum met or exceeded the Defendant's legitimate performance expectations.

12. He performed his job duties so well he was promoted to Maintenance Director.

13. On December 29, 2020, Demumbreum was forced on to Administrative Leave (where he was forced to use his PTO time for compensation), informed he was terminated from his position as Maintenance Director, and he had 8 weeks to find another job with the Defendant. All of these actions were allegedly taken because of Demumbreum's DUI.

14. Demumbreum's issues began when Wendy Harrington ("Harrington"), who is Caucasian, became Executive Director. Demumbreum first noticed that overtime hours and extra shifts were being given to Caucasian employees over African-American employees who had more seniority – in contravention of Defendant's policies and procedures.

15. Demumbreum recommended and wanted to hire African-American employees, but Harrington did not allow the hiring of African-American employees and – instead – steadily hired Caucasian employees.

16. In fact, on at least 2 occasions, Harrington overruled Demumbreum's decision to hire African-American applicants and hired Caucasians instead – even though, one of the Caucasian's job references referred to her as a "crackhead ho."

17. Harrington did not even allow Demumbreum to interview the Caucasian applicants prior to hiring them. Seeing what was happening, Demumbreum engaged in a protected activity and complained to Harrington, Director of Nursing – Kelly Bowers, and Chief Executive Jordan [last name unknown] of the discriminatory treatment and animus.

18. In retaliation for his complaints of discrimination, Harrington started excluding Demumbreum from meetings, ignoring his requests, and started searching for ways to terminate his employment. Apparently, the opportunity presented itself when the Defendant allegedly ran his DMV report and the DUI was present and Demumbreum allegedly failed to notify anyone with the Defendant.

19. Demumbreum was always been upfront about his DUI – in fact, when he got his restricted license in 2019, the Executive Director at the time wrote a letter on his behalf so he could get the restricted license and drive to work. Demumbreum showed the letter to Harrington, but she terminated him nonetheless.

20. Demumbreum contacted the Defendant's Human Resources where he pointed to his applications and DMV reports for both of his positions, but the Defendant contended that it had lost his previous paperwork.

21. HR told Demumbreum that they spoke with their attorneys and Demumbreum needed to go apply for other jobs with the Defendant, at a much lower hourly rate and at a different location.

22. Demumbreum hired counsel and counsel sent a letter to the Defendant on January 25, 2021, raising the discrimination issues of behalf of Demumbreum. Defendant replied that Demumbreum was terminated affective March 5, 2021 and listed additional – alleged – justifications for his termination.

23. Demumbreum was discriminated against based on his race and/or retaliated against in violation of Title VII of the Civil Rights Act of 1964.

## V. LEGAL ALLEGATIONS

### COUNT I - RACE DISCRIMINATION

24. Demumbreum hereby incorporates by reference paragraphs one (1) through twenty-three (23) of his Complaint.

25. Demumbreum was discriminated against and terminated from his employment based on his race, African-American.

26. Defendant's actions are in violation of Title VII of the Civil Rights Act of 1964.

27. Defendant's actions were willful, intentional, and done with reckless disregard for Demumbreum's civil rights.

28. Demumbreum has suffered injury as a result of Defendant's unlawful actions.

## COUNT II – RETALIATION

29. Demumbreum hereby incorporates paragraphs one (1) through twenty-eight (28) of his Complaint.

30. Demumbreum was retaliated against and terminated for exercising his rights under Title VII.

31. Defendant's actions were willful, intentional, and done with reckless disregard for Demumbreum's civil rights

32. Demumbreum has suffered and continues to suffer harm as a result of Defendant's unlawful actions.

## REQUESTED RELIEF

WHEREFORE, Plaintiff, Charles Demumbreum, by counsel, respectfully requests that this Court find for Plaintiff and order Defendant to:

1. Reinstate Plaintiff to the position, salary, and seniority level he would have enjoyed but for Defendant's unlawful employment actions, or award front pay in lieu thereof;

2. Enjoin the Defendant from discriminating against any employee based on his or her race or for engaging in a protected activity;

3. Pay to Plaintiff all his lost wages and benefits;

4. Pay to Plaintiff compensatory damages, damages for mental, physical, and emotional distress and payment of uncovered medical bills and/or insurance premiums;

5. Pay to Plaintiff punitive damages;

6. Pay to Plaintiff pre- and post-judgment interest;

7. Pay Plaintiff's costs and attorney fees incurred in litigating this action; and,

8. Provide any further equitable relief this Court sees fit to grant.

Respectfully submitted,

_s/Kyle F. Biesecker_
Kyle F. Biesecker, Attorney No. 28872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone:  (615) 783-2171
Facsimile:  (812) 424-1005
E-Mail:  kfb@bdlegal.com

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

The Plaintiff, Charles Demumbreum, by counsel, respectfully requests a jury trial as to all issues deemed so triable.

Respectfully submitted,

_s/Kyle F. Biesecker_
Kyle F. Biesecker, Attorney No. 28872
BIESECKER DUTKANYCH & MACER, LLC
3200 West End Avenue, Suite 500
Nashville, Tennessee 37203
Telephone:  (615) 783-2171
Facsimile:  (812) 424-1005
E-Mail:  kfb@bdlegal.com

*Attorneys for Plaintiff*